**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DYLAN KANE IRRGANG, | : | CIVIL NO. 1:25-cv-01635 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| FRANK BISIGNANO, Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

## I. Introduction.

In this social security action, Plaintiff Dylan Kane Irrgang ("Irrgang") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") finding that his disability under section 1614(a)(3)(A) of the Social Security Act ended on June 1, 2019, and that he has not become disabled again since that date. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, we will affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 8-1* to *8-11*.[1] In a Comparison Point Decision ("CPD") dated March 11, 2016, Irrgang was found to be disabled. *Admin. Tr.* at 122–131, 178–79. On June 5, 2019, however, the Commissioner determined that Irrgang was no longer disabled as of June 2019. *Id.* at 131–48, 180–83.

On June 12, 2019, Irrgang requested reconsideration of the Commissioner's decision finding that he was no longer disabled. *Id.* at 184–85. A Disability Hearing Officer upheld this determination after a hearing on November 5, 2019, and on November 18, 2019, the Social Security Administration determined that Irrgang's health had improved and that he was able to work. *Id.* at 188–97, 199–201. On November 26, 2019, Irrgang requested an administrative hearing. *Id.* at 205–06.

On July 21, 2022, Irrgang—who was represented by counsel—as well as a vocational expert testified at a telephonic hearing before Administrate Law Judge Howard Kaufman (the "ALJ"). *Id.* at 43–103. On August 19, 2022, the ALJ found that Irrgang's disability ended on June 5, 2019, and that he has not become

[1] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Irrgang's claims.

disabled again since that date. *Id.* at 149–161. Irrgang appealed the ALJ's decision to the Appeals Council, which subsequently vacated the ALJ's August 2022 decision, and remanded the case to the ALJ with instructions to "[e]valuate the opinion evidence pursuant to 20 CFR 416.927, the prior rules, in accordance with HALLEX I-5-3-30 IV.E.1." *Id.* at 169–72. On remand, the ALJ held a telephonic hearing. *Id.* at 104–21. Irrgang and a vocational expert testified at the hearing. *Id.*

By a decision dated July 25, 2024, the ALJ found Irrgang's disability ended on June 1, 2019, and that he has not become disabled again since that date. *Id.* at 14–26. Irrgang appealed the July 2024 Decision to the Appeals Council, which denied his request for review. *Id.* at 1–6. This makes the ALJ's July 2024 Decision the final decision of the Commissioner subject to judicial review by this Court.

On September 2, 2025, Irrgang, represented by counsel, began this action by filing a complaint seeking review of the Commissioner's decision denying his claim. *See doc. 1*. He requests that the court reverse the Commissioner's decision and declare that he is entitled to benefits pursuant to the Social Security Act. *Id.* ¶ 18. He also seeks a judgment for "further relief" as the court deems proper. *Id.* ¶ 19.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 7*. The Commissioner filed a certified transcript of the administrative proceedings, which

constitutes the entirety of his answer. *See doc. 8*. The parties filed briefs (*see docs. 13, 15*) and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Irrgang is disabled, but whether substantial evidence supports the Commissioner's finding that he is no longer disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation.**

Once a claimant is found to be disabled, there is a statutory requirement that "if [a claimant is] entitled to disability benefits, [their] continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 416.994(a). In determining whether the claimant is still under a disability, the ALJ follows a seven-step sequential evaluation process. *Id.* § 416.994(b)(5); *Reefer v. Barnhart*, 326 F.3d 376, 378 n.1 (3d Cir. 2003).

At step one, the ALJ evaluates whether the claimant has "an impairment or a combination of impairments that either meets or equals the severity of an

impairment listed in [20 C.F.R. Part 404, Subpart P, Appendix 1].” *Id.* § 416.994(b)(5)(i). If the claimant meets or equals a listed impairment, then the disability continues. *Id.* If not, the analysis goes on to step two. *Id.*

At step two, the ALJ must determine whether there has been a medical improvement in the claimant’s condition.[2] *Id.* § 416.994(b)(5)(ii). In making this determination, the ALJ compares the medical severity of the impairment(s) from the point of the most recent favorable determination with the current severity of the impairment(s). *Id.* If medical improvement has occurred, the analysis proceeds to step three. *Id.* If medical improvement has not occurred, then the analysis skips to step four. *Id.*

At step three, the ALJ must determine whether the medical improvements found in step two are related to the claimant’s ability to do work. *Id.* § 416.994(b)(5)(iii). The relationship of a medical improvement to the ability to do work is determined by looking at whether the medical disability has resulted in an increase of the claimant’s RFC. *Id.* “If [the] medical improvement is not related to [the] ability to do work,” then the analysis proceeds to step four. *Id.* If it is related, then the analysis goes to step five. *Id.*

[2] The definition of medical improvement is “any decrease in the medical severity” of the relevant impairment that is established by improvements “in the symptoms, signs, or laboratory findings.” 20 C.F.R. § 416.994(b)(1)(i).

At step four, the ALJ determines if one of two sets of exceptions to medical improvements apply. *Id.* § 416.994(b)(3). Under the first set of medical exceptions a claimant should no longer be considered disabled when (1) "[s]ubstantial evidence shows that [the claimant is] the beneficiary of advances in medical or vocational therapy or technology (related to [the claimant's] ability to work)"; (2) "[s]ubstantial evidence shows that [the claimant has] undergone vocational therapy (related to [the claimant's] ability to work)"; (3) "[s]ubstantial evidence shows that based on new or improved diagnostic or evaluative techniques [the claimant's] impairment(s) [are] not as disabling as it was considered to be at the time of the most recent favorable decision"; or (4) "[s]ubstantial evidence demonstrates that any prior disability decision was in error." *Id.* §§ 416.994(b)(3)(i)–(iv).

The second set of medical exceptions allows a decision to be made without a determination that the claimant has medically improved or can engage in substantial gainful activity when (1) a prior determination or decision was fraudulently obtained, (2) the claimant does not cooperate, (3) the claimant cannot be found, or (4) the claimant fails to follow the prescribed treatment that would be expected to restore their ability to engage in substantial gainful activity. *Id.* §§ 416.994(b)(4)(i)–(iv). If no exception at step four applies, the claimant is still disabled. *Id.* § 416.994(b)(5)(iv). If an exception from the first group is applicable,

the analysis goes to step five. *Id.* If, on the other hand, an exception from the second group applies, the claimant's "disability will be found to have ended." *Id.*

At step five, the ALJ is required to determine whether the claimant's "impairments in combination are severe." *Id.* § 416.994(b)(5)(v). If all of the claimant's "current impairments in combination do not significantly limit [the claimant's] physical or mental abilities to do basic work activities," then the impairments will be deemed not severe, and the claimant will be deemed not disabled. *Id.* However, if a significant limitation to do basic work is found, then the analysis proceeds to the next step.[3] *Id.*

At step six, the ALJ must assess the claimant's RFC based on the current impairments and evaluate the claimant's ability to perform past relevant work. *Id.* § 416.994(b)(5)(vi). If the claimant can perform past relevant work, the claimant is not disabled. *Id.* If he or she cannot, then the analysis proceeds to step seven. *Id.*

At step seven, the ALJ evaluates the ability of the claimant to perform other work in the national economy. *Id.* § 416.994(b)(5)(vii). This analysis takes into account a claimant's RFC, age, education, and past work experience. *Id.* If the

[3] Basic work is defined as "the abilities and aptitudes necessary to do most jobs," consisting of exertional abilities such as "walking, standing, pushing, pulling, reaching and carrying" and "nonexertional abilities and aptitudes such as seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers." 20 C.F.R. § 416.994(b)(1)(iv).

claimant is found to be able to perform other work in light of these factors, then the claimant is not disabled. *Id.* If not, the disability continues. *Id.*

In a benefits-termination proceeding, the burden is on the claimant to "introduce evidence that his or her condition remains essentially the same as it was at the time of the earlier determination." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 308 (3d Cir. 2012) (quoting *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Once a recipient has done so, "the burden shifts to the [Commissioner] to 'present evidence that there has been sufficient improvement in the [recipient's] condition to allow the [recipient] to undertake gainful activity.'" *Id.* (quoting *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983)).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or

simply ignored.'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 198, 121 (3d Cir. 2000) (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision.**

On July 25, 2024, the ALJ found that Irrgang's disability "ended on June 1, 2019, and that [he] has not become disabled again since that date." *Admin. Tr.* at 14–26. Applying the sequential-evaluation process, the ALJ determined that Irrgang was no longer disabled within the meaning of the Social Security Act. *Id.* The ALJ concluded that the CPD, dated March 11, 2016, was the "most recent favorable medical decision finding that [Irrgang] continued to be disabled." *Id.* at 19. At the time of the CPD, Irrgang had the medically determinable impairment of asthma, which met Listing 3.03B. *Id.*

**A. Step One.**

At step one of the sequential-evaluation process, the ALJ found that Irrgang had the following medically determinable impairments: "depression; anxiety; carpal tunnel syndrome; neuropathy; and asthma." *Id.* The ALJ also found that since June 1, 2019, Irrgang "has not had an impairment or combination of impairments that meets or medically equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* Specifically, the ALJ concluded that Irrgang's physical impairments do not meet or medically equal Listings 3.03 and 11.14. *Id.*

He also concluded that Irrgang's mental impairments do not meet or medically equal Listings 12.04 and 12.06. *Id.* In making this finding, the ALJ considered the four broad areas of mental functioning set forth in the disability regulations for evaluating mental disorders[4] and in the listings, known as the paragraph B criteria.[5]

The ALJ determined that Irrgang had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. *Id.* at 19–20. The ALJ

---

[4] When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F.R. § 416.920a. As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id.* § 416.920a(c)(4). The ratings in these four broad functional areas are used to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id.* § 416.920a(d).

[5] The listings for mental disorders contain either two paragraphs (A and B) or three paragraphs (A, B, and C). *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A.2. Except as to Listing 12.05 (intellectual disorder), paragraph B of each of the listings for the mental disorders sets forth the same four functional criteria as set forth in 20 C.F.R. § 416.920a, and the listings use the same five-point rating scale as those regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00.A.2.b, 12.00.E, 12.00.F. This is what the ALJ is referring to when he refers to the paragraph B criteria.

recognized that the paragraph B criteria are not an RFC; rather, they "are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." *Id.* at 20. The RFC, however, is "used at steps 4 and 5 of the sequential evaluation process" and "requires a more detailed assessment." *Id.* The ALJ also asserted that the RFC assessment that followed "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." *Id.*

The ALJ also considered the paragraph C criteria, but he found that "the evidence fails to establish the presence of the 'paragraph C' criteria." *Id.* He based this decision on a lack of evidence that Irrgang experiences "marginal adjustment" as required for the paragraph C criteria. *Id.* Marginal adjustment is "a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life." *Id.* The ALJ cited Irrgang's ability to handle changes in his routine "OK" in coming to this conclusion. *Id.* The AJL further noted that no state agency psychological consultant concluded that a mental listing is medically equaled. *Id.*

**B. Step Two.**

At step two of the sequential-evaluation process, the ALJ determined that "[m]edical improvement occurred on June 1, 2019" and that "medical evidence supports a finding that, by June 1, 2019, there had been a decrease in medical

severity of the impairment present at the time of the CPD." *Id.* The ALJ noted that on March 4, 2021, a spirometry revealed only minimal airway obstruction. *Id.* He further noted that Irrgang's asthma was reported as generally well controlled on October 29, 2021. *Id.*

**C. Step Three.**

At step three of the sequential-evaluation process, the ALJ found that Irrgang's medical improvement was related to his ability to work because his "CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD." *Id.* at 21. Accordingly, the ALJ proceeded to step five of the sequential-evaluation process, where he found that Irrgang continued to have a severe impairment or combination of impairments that had more than a minimal limitation on his ability to perform basic work activities. *Id.*

**D. The RFC.**

At step six of the sequential-evaluation process, the ALJ then determined that Irrgang had the RFC to perform medium work[6] with the following limitations:

[6] *See* 20 C.F.R. § 416.967(c) ("*See* 20 C.F.R. § 416.967(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.").

> [H]e is limited to frequent handling and fingering with his bilateral upper extremities. The claimant is limited to frequent pushing/pulling with his bilateral lower extremities. The claimant can sit, stand, or walk for 6 hours each in an 8-hour workday. He should never be exposed to extreme cold, extreme heat, fumes, dusts, gases, odors, and poor ventilation. The claimant is limited to simple, repetitive, and routine tasks. He cannot work at a production rate pace. The claimant is limited to occasional interaction with the public, co-workers, and supervisors. He is limited to low stress jobs.

*Id.* In making this RFC assessment, the ALJ considered Irrgang's testimony and assertions regarding his limitations. The ALJ concluded that Irrgang's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the objective medical and other evidence [in the record]." *Id.*

The ALJ also considered the medical records. *Id.* at 22–23. And he considered opinion evidence from various medical professionals, including Dr. Schiller, Dr. Fox, Dr. Tavares, Dr. Jonas, and Dr. Reardon. *Id.* at 23–24. The ALJ gave great weight to Dr. Schiller's opinion that Irrgang has no more than moderate limitations. *Id.* at 23. The ALJ found that Dr. Schiller's opinion was supported by the record as a whole and consistent with treatment records noting that Irrgang is cooperative and has normal attention span and concentration. *Id.* The ALJ gave partial weight to Dr. Fox's opinion that Irrgang can perform medium work. *Id.* at 24. The ALJ found that Dr. Fox's opinion was supported by the record as a whole

and consistent with treatment records that Irrgang has normal muscle strength and tone. *Id.* The ALJ gave limited weight to Dr. Tavares's opinions that Irrgang's "lifting and/or carrying are limited to 20 pounds occasionally and 10 pounds frequently" and he "should never climb ladders or scaffolds." *Id.* The ALJ found that Dr. Tavares's opinions were not supported by the record as a whole and were not consistent with treatment records reflecting normal muscle strength and tone and no focal deficits. *Id.* The ALJ assigned great weight to Dr. Jonas's opinion that Irrgang has no more than moderate limitations for the same reasons the ALJ noted for Dr. Schiller's opinion. *Id.* Lastly, the ALJ gave limited weight to Dr. Reardon's opinion that Irrgang's "lifting and/or carrying are limited to 20 pounds occasionally and 10 pounds frequently" and he "is limited to occasional climbing of ladders, ropes or scaffolds." *Id.* The ALJ provided the same reasoning as he did regarding Dr. Tavares's opinion. *Id.*

**E. Step Seven**

At step seven of the sequential-evaluation process, the ALJ determined that Irrgang has no past relevant work. *Id.* at 24. Additionally, considering Irrgang's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were other jobs—such as machine feeder, utility

worker, and industrial cleaner—that exist in significant numbers in the national economy that Irrgang could perform. *Id.* at 25.

In sum, the ALJ concluded that Irrgang's "disability under Section 1614(a)(3)(A) of the Social Security Act ended on June 1, 2019, and [he] has not become disabled again since that date." *Id.* at 25–26.

**V. Discussion.**

Irrgang raises three statements of error in his brief: (1) "[t]he ALJ erred in [] failing to follow the Order of the Appeals Council to review opinion evidence pursuant to [20 C.F.R. § 416.927]," (2) the ALJ erred "[i]n according only limited weight to the opinions of his treating sources," and (3) the ALJ erred "[i]n assigning little weight to the medical opinion of [Dr. Reardon], a state agency physician[,] and great weight to the opinion of [Dr. Jonas], a state agency psychologist, who only performed a record review without the benefit of actually examining [Irrgang], over the opinion of examining physicians." *Doc. 13* at 4. Because Irrgang's claims are interrelated, we address them together. And because Irrgang's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence.

**A. Opinion Testimony.**

The regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians. Because the CPD is before March 27, 2017, the old regulations apply in this matter.[7]

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the

[7] The Appeals Council directed the ALJ to evaluate the opinion evidence pursuant to the old regulations because the CPD is before March 27, 2017. *Admin. Tr.* at 171.

"[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id.* at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

**B. The ALJ Did Not Err in Weighing the Medical Opinion Evidence.**

Irrgang contends that the ALJ "failed to afford the deference required by the regulation to [Irrgang's] treating source, Dr. Parmar." *Doc. 13* at 6. Specifically, he claims the ALJ improperly gave greater weight to Irrgang's primary care physician than Dr. Parmar, a specialist. *Id.* at 7. In response, the Commissioner argues that Dr. Parmar's opinion does not constitute a medical opinion because it contained no specific work-related functional limitations. *Doc. 15* at 11.

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [] impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1) (applicable to claims filed before Mar. 27, 2017). Our review of this evidence reveals that Dr. Parmar's findings do not comport with the regulatory definition of a "medical opinion." Dr. Parmar diagnoses Irrgang with carpal tunnel syndrome. *Admin. Tr.* 1318–29. He further notes Irrgang's subjective complaints of tingling and numbness in his upper extremities and that he drops

things. *Id.* at 1318–29, 1409–24. But Dr. Parmar does not set forth any limitation of Irrgang or what activities he could or could not perform despite his impairment. *See id.* Nor does Dr. Parmar analyze Irrgang's capabilities in regards to the abilities listed in 20 C.F.R. § 416.913 paragraphs (a)(2)(i)(A) through (D) and (a)(2)(ii)(A) through (F). *See id.* Dr. Parmar's treatment records merely provide a description of how Irrgang presented on a particular day. Accordingly, Dr. Parmer's treatment records do not satisfy the definition of a medical opinion and, as such, the ALJ need not assign it any weight, as required for medical opinions pursuant to the old regulations. *See Evanock v. Saul*, No. 4:19-CV-889, 2020 WL 2556919, at *10 (M.D. Pa. May 20, 2020) (finding a treating physician's objective treatment records did not constitute a medical opinion entitled to weight under the treating source rule); *Falcone v. Berryhill*, No. 3:16-CV-1705, 2017 WL 7222358, at *10 (M.D. Pa. Nov. 29, 2017) (finding that a chiropractor's notations documenting the claimant's appearance and demeanor during examination did not constitute valid medical opinions).

Irrgang further argues that the ALJ erred in assigning great weight to Dr. Jonas, a non-examining state agency psychologist. *Doc. 13* at 7. Specifically, Irrgang contends that the ALJ's observation that Dr. Jonas's opinion is "consistent with Dr. Parmar's observation that the claimant has a normal attention span and

concentration" was improper because Dr. Parmar "is not qualified to make mental health determinations." *Id.*

At the outset, we note that examining physicians' medical opinions do not automatically trump non-examining physicians' opinions. *See Morris v. Colvin*, No. 3:14-1902, 2015 WL 7252524, at *5 (M.D. Pa. Nov. 17, 2015) (explaining that examining medical opinions do not inherently outweigh non-examining medical opinions and that under certain conditions medical opinions from non-examining medical consultants may garner more weight than examining or treating medical sources medical opinions). ALJ's have the discretion to afford greater weight to medical opinions from non-examining physicians over those of examining or treating physicians. *See Jackson v. Colvin*, No. 3:13-00886, 2014 WL 4955231, at *9 (M.D. Pa. Sept. 30, 2014) (clarifying that "[w]hen the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the [ALJ] may choose whom to credit in his or her analysis").

As to Irrgang's specific statement of error, Irrgang does not cite to any statute, regulation, or case to support his contention that the ALJ erred in relying on Dr. Parmar's observation regarding mental status. Without more, Irrgang's assertion is unfounded. In any event, the ALJ did not find that Dr. Jonas's opinion was supported by Dr. Parmar's statement alone. He further reasoned that Dr. Jonas's opinion was supported by the record as a whole and consistent with other

treatment records that noted Irrgang is cooperative. *Admin. Tr.* at 24. Accordingly, we find no error in the ALJ's treatment of the opinion evidence.

## VI. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner. An appropriate order follows.

***S/Susan E. Schwab***
Susan E. Schwab
United States Magistrate Judge